**ORAL ARGUMENT SCHEDULED FOR JANUARY 12, 2015**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————————

**No. 14-1068**

———————————

**INTERCOLLEGIATE BROADCASTING SYSTEM, INC.,**

**Appellant,**

**v.**

**COPYRIGHT ROYALTY BOARD AND LIBRARY OF CONGRESS,**

**Appellees,**

**COLLEGE BROADCASTERS, INC. and
SOUNDEXCHANGE, INC.,**

**Intervenors.**

———————————

**ON APPEAL FROM THE COPYRIGHT ROYALTY JUDGES**

———————————

**FINAL BRIEF OF INTERVENOR COLLEGE BROADCASTERS,
INC. IN SUPPORT OF APPELLEES**

———————————

CATHERINE R. GELLIS
P.O. Box 2477
Sausalito, CA 94966
(202) 642-2849

DAVID D. GOLDEN
CONSTANTINE CANNON LLP
1001 Pennsylvania Ave., N.W.
Suite 1300N
Washington, DC 20004
(202) 204-3500

*Counsel for Intervenor College Broadcasters, Inc.*

December 1, 2014

# CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

**A. Parties and Amici.** The appellant is Intercollegiate Broadcasting System, Inc. ("IBS"). The appellees are the Copyright Royalty Board ("CRB") and the Librarian of Congress.  With the permission of this Court, College Broadcasters, Inc. ("CBI") and SoundExchange, Inc. ("SoundExchange") have intervened in support of the appellees. *See* No. 14-1068 (June 24, 2014) (Doc. No. 1463371) (granting motions to intervene). CBI is unaware of any *amici*.

**B. Ruling Under Review.** The ruling under review is a final determination ("Determination") of the CRB: *Determination of Royalty Rates for Digital Performance Right in Sound Recordings and Ephemeral Recordings*, 79 Fed. Reg. 23,102 (Apr. 25, 2014) (Joint Appendix ("JA") 256), in Docket No. 2009-1 CRB Webcasting III ("Web III").

**C. Related Cases.** A review of the Determination at issue in this case has not previously come before this Court or any other court.  Appellant IBS previously sought review of an earlier determination by the CRB in Web III in *Intercollegiate Broadcasting System, Inc. v. Copyright Royalty Board*, 684 F.3d 1332 (D.C. Cir. 2012), *cert. denied* 133 S. Ct. 2735 ("*IBS II*").  IBS had also previously appealed another CRB determination related to a

i

previous rate setting proceeding in *Intercollegiate Broadcasting System, Inc. v. Copyright Royalty Board*, 574 F.3d 748 (D.C. Cir. 2009).[1]   Additionally, IBS intervened in an appeal CBI had pending before this Court, No. 09-1276, challenging a separate decision of the CRB.[2]   That case was recently transferred to the district court.  Order, *College Broadcasters, Inc. v. Copyright Royalty Board*, No. 09-1276 (Oct. 28, 2013) (Doc. No. 1463371) (ordering transfer of CRB rulemaking appeal to United States District Court for the District of Columbia).

     **D. Deferred Appendix.**  The parties are using a deferred appendix.

---

[1] *Digital Performance Right in Sound Recording and Ephemeral Recordings*, 75 Fed. Reg. 56873 (Sept. 17, 2010) (Remand Order) No. 2005-1 CRB DTRA (Webcasting II) (JA 137).
[2] *See Notice and Recordkeeping for Use of Sound Recordings Under Statutory License*, 74 Fed. Reg. 52,418 (Final Rule) (Oct. 13, 2009) (JA 92).

## CORPORATE DISCLOSURE STATEMENT

College Broadcasters, Inc., Intervenor, is a nonprofit organization under Section 501(c)(3) of the Internal Revenue Code, organized under the laws of the State of Delaware, dedicated to representing the interests of students involved in radio, television, webcasting and related media.  It has no parent company, and no company owns a 10% or greater ownership interest in it.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES .... i

    A. Parties and Amici ................................................................. i

    B. Ruling Under Review ........................................................... i

    C. Related Cases ...................................................................... i

    D. Deferred Appendix ............................................................. ii

CORPORATE DISCLOSURE STATEMENT .......................................... iii

TABLE OF AUTHORITIES ...................................................................... i

GLOSSARY ............................................................................................. i

STATEMENT OF ISSUES ........................................................................ 1

PERTINENT STATUTES AND REGULATIONS ...................................... 1

STATEMENT OF THE FACTS .................................................................. 2

    1.   Statutory and Regulatory Background .......................................... 2

    2.   Procedural Background ................................................................ 2

SUMMARY OF ARGUMENT ................................................................... 6

ARGUMENT ........................................................................................... 7

I.   The Portion of the Determination Incorporating the Settlement for the Statutory Rates and Terms for NEWs Should Remain Untouched Because it is not Unconstitutional ........................................................ 7

    A.   IBS has not challenged the constitutionality of the portion of the Determination reflecting adoption of the Settlement. .................. 7

    B.   Even if the CRB had been unconstitutionally formed at the time it originally adopted the Settlement, the Settlement must still stand because the adoption was purely ministerial and not subject to the Judges' discretion ................................................... 9

II.  Reopening the Record with Respect to the Settlement Would Prejudice CBI and Waste Resources ................................................... 11

CONCLUSION ...................................................................................... 12

CERTIFICATE OF COMPLIANCE ......................................................... 14

CIRCUIT RULE 28(d)(4) CERTIFICATE ................................................15

CERTIFICATE OF SERVICE ..................................................................16

ADDENDUM ..........................................................................................17

# TABLE OF AUTHORITIES[*]

## Federal Cases

*Intercollegiate Broadcasting System, Inc. v. Copyright Royalty Board*,
    574 F.3d 748 (D.C. Cir. 2009) ................................................................... ii
*Intercollegiate Broadcasting System, Inc. v. Copyright Royalty Board*,
    684 F.3d 1332 (D.C. Cir. 2012), *cert. denied* 133 S. Ct. 2735.................... i

## Statutes

17 U.S.C. § 801(b)(7)(A) ....................................................................2, 3, 11
17 U.S.C. § 801(b)(7)(A)(ii) .................................................................... 9
17 U.S.C. § 803 ......................................................................................... 3

## Federal Regulations

37 C.F.R. § 380.20................................................................................... 5
37 C.F.R. § 380.21 .................................................................................. 2
*Determination of Royalty Rates for Digital Performance Right in Sound
    Recordings and Ephemeral Recordings*, 79 Fed. Reg. 23,102 (Apr. 25,
    2014) ................................................................................4, 6, 10, 12
*Digital Performance Right in Sound Recording and Ephemeral
    Recordings*, 75 Fed. Reg. 56873 (Sept. 17, 2010) ..................................... ii
*Digital Performance Right in Sound Recordings and Ephemeral
    Recordings*, 76 Fed. Reg. 13,026, 13,042 (Mar. 9, 2011).......................4, 5
*Notice and Recordkeeping for Use of Sound Recordings Under Statutory
    License*, 74 Fed. Reg. 52,418 (Final Rule) (Oct. 13, 2009) ....................... ii

## Other Authorities

H. Rep. No. 108-408 (2004)...............................................................11, 12
Order, *College Broadcasters, Inc. v. Copyright Royalty Board*, No. 09-1276
    (Oct. 28, 2013) (Doc. No. 1463371) ........................................................ ii
Webcaster Settlement Act of 2008, Pub. L. No. 110–435, 122 Stat. 4974
    (Oct. 16, 2008) ...............................................................................11
Webcaster Settlement Act of 2009, Pub. L. No. 111–36, 123 Stat. 1926
    (June 30, 2009) ...............................................................................11

---

[*] Intervenor CBI does not rely on any specific authorities.

# GLOSSARY

| Term | Description |
| --- | --- |
| CBI | College Broadcasters, Inc., Intervenor for Appellee. |
| CRB | Copyright Royalty Board, which is comprised of the Copyright Royalty Judges |
| IBS | Intercollegiate Broadcasting System, Appellant. |
| IBS II | *Intercollegiate Broadcasting System, Inc. v. Copyright Royalty Board*, 684 F.3d 1332 (D.C. Cir. 2012), *cert. denied* 133 S. Ct. 2735. |
| NEW | Noncommercial Educational Webcaster, an entity defined in 37 C.F.R. § 380.21 as a noncommercial webcaster operated by or affiliated with an accredited educational institution and staffed substantially by students. |
| Web III | *Determination of Royalty Rates for Digital Performance Right in Sound Recordings and Ephemeral Recordings*, 79 Fed. Reg. 23,102 (Apr. 25, 2014), Docket No. 2009-1 CRB Webcasting III, a proceeding before and determination by the Copyright Royalty Judges as to royalty rates and terms for webcasting (Internet radio) for the 2011-2015 period. |

## STATEMENT OF THE ISSUES

I.    Whether, if this Court were to grant IBS the remedy it seeks, it should affect the portion of the Determination adopting the settlement between CBI and SoundExchange ("Settlement") setting the statutory rates and terms for Noncommercial Educational Webcasters ("NEWs").

## PERTINENT STATUTES AND REGULATIONS

All applicable statutes are set forth in the addendum to appellant IBS's brief.  Relevant regulations are attached herein.

## STATEMENT OF THE FACTS

1.  **Statutory and Regulatory Background**

Under Section 801 of the Copyright Act, one of the functions of the

CRB is "[t]o adopt as a basis for statutory terms and rates . . . an agreement

concerning such matters reached among some or all of the participants in a

proceeding at any time during the proceeding."  17 U.S.C. § 801(b)(7)(A).

As a result of the CRB's adoption of an agreement between intevenors

CBI and SoundExchange, a portion of the regulations promulgated by the

Determination at issue in this case establishes royalty rates and terms for

"noncommercial *educational* webcasters" ("NEWs").  NEWS are defined, in

part, as noncommercial webcasters that are directly operated by, or affiliated

with and officially sanctioned by, domestically accredited primary or

secondary schools, colleges, universities or other post-secondary degree-

granting educational institutions, so long as the digital audio transmission

operations are staffed substantially by students.  37 C.F.R. § 380.21.

2.  **Procedural Background**

Both IBS and CBI were participants in the underlying Web III

proceeding before the CRB, but they each participated in distinctly different

ways.  IBS participated fully throughout the adversarial process set forth by

2

17 U.S.C. § 803, submitting argument and testimony in support of the rates

and terms it believed the CRB should determine to be appropriate for

"small" and "very small" noncommercial webcasters.  (IBS Br. 9).  CBI,

however, took a different route.

In 2009, after negotiations and under the authority of the Webcaster

Settlement Act of 2009,[3] CBI and SoundExchange reached a Settlement

setting forth the royalty rates and terms applicable to NEWs webcasting

copyrighted music recordings during the 2011-2015 period.  On August 13,

2009, CBI and SoundExchange jointly moved the Copyright Royalty Judges

("Judges") to adopt their Settlement under 17 U.S.C. § 801(b)(7)(A) as the

basis for statutory terms and rates for all NEWs as defined by the

regulation.[4]

As required by the statute, the Judges published the Settlement for

public comment.  Twenty-four NEWs submitted comments in support of the

agreement.  *Determination of Royalty Rates for Digital Performance Right*

---

[3] *Infra* note 7.

[4] CBI formally remained a participant throughout the remainder of Web III for the sole purpose of ensuring the Settlement was adopted.  It participated only to the extent the procedural rules appeared to require particular filings such as a written direct statement in order to preserve standing but did not otherwise promulgate discovery, present witnesses, or introduce any other evidence at the in-person hearings the CRB conducted.

3

*in Sound Recordings and Ephemeral Recordings*, 79 Fed. Reg. 23,102, 23,120 (Apr. 25, 2014) (JA 275). *See also Digital Performance Right in Sound Recordings and Ephemeral Recordings*, 76 Fed. Reg. 13,026, 13,042 (Mar. 9, 2011) (JA 156). Only IBS filed a comment ostensibly opposing adoption of the agreement. 79 Fed. Reg. at 23,120 (JA 275). *See also* 76 Fed. Reg. at 13,039 (JA 153). In its closing argument before the Judges, however, IBS clarified that it did *not* actually oppose the adoption of the agreement as rates and terms for NEWs. IBS instead opposed the agreement only inasmuch as it would be applied to *other* categories of webcasters, specifically to the "small and very small noncommercial webcaster" categories that IBS had proposed:

> [THE JUDGES]: So you're just objecting to it on the theory that you just hope that what's ever in there doesn't somehow get applied to your case, even though you're asking for *two completely different services?*
> MR. MALONE: That's essentially correct, Your Honor.

79 Fed. Reg. at 23,121 n.56 (emphasis added) (JA 276). *See also* 76 Fed. Reg. at 13,042 n.19 (JA 156); (IBS Br. 10) ("IBS did not oppose applying the $500 fee to noncommercial webcasters generally, but proposed instead a

4

$50 annual fee for those designated 'small,' and a $20 annual fee for 'very small' ones.").

Thus, because there was no objection to the adoption of the Settlement as applied to NEWs, in its determination the Judges adopted the agreement as regulations applying to them.  76 Fed. Reg. at 13,040 (JA 154).  *See also* 37 C.F.R. § 380.20 *et seq.* (codifying the regulations reflecting the Settlement).  Separately, as part of the resolution of the adversarial proceedings, the Judges also declined to adopt IBS's proposed alternative rates and terms for those other categories of "small" and "very small" webcasters.  76 Fed. Reg. at 13,042 (JA 156).

IBS appealed that earlier determination, and CBI moved to intervene in its appeal for the limited purpose of ensuring that the Judges' adoption of CBI's Settlement with SoundExchange remain in place, regardless of what other actions this Court might take with respect to the Constitutional issues raised by IBS.  Although in its decision in that appeal this Court did not speak to the disposition of the Settlement, the CRB interpreted this Court's remand order to require it to reconsider its adoption anew.  (CRB Br. 10).  As part of the remand proceedings CBI and SoundExchange both moved to

have it re-adopted, which the CRB subsequently did as part of its final Determination. 79 Fed. Reg. at 23,121 (JA 276).

IBS has not challenged that adoption of the Settlement as part of the instant appeal.  (IBS Br. 19) (arguing instead against the $500 minimum fee applying "across-the-board" to all non-commercial webcasters).  CBI nevertheless intervenes now to ensure that if this Court sets aside any of the Determination it that it only affect the portion addressing rates and terms for small and very small noncommercial webcasters.  It should not set aside the portions reflecting the CRB's adoption of the Settlement as the statutory rates and terms for NEWs.

## SUMMARY OF ARGUMENT

In its appeal IBS argues that the Determination should be set aside because the remand proceeding of the newly-constituted CRB "merely ratified the work of the unconstitutionally appointed judges" and because the resulting decision was arbitrary and capricious in not sufficiently distinguishing certain classes of webcasters.  (IBS Br. 2-3).  CBI thus intervenes because even if this Court were to find IBS's arguments sufficiently compelling to warrant setting aside the Determination, only the portion of the Determination relating to IBS's advocacy for small and very

6

small webcasters should be set aside.  The portion of the Determination

reflecting the CRB's adoption of the Settlement between CBI and

SoundExchange as the statutory rates and terms for NEWs should remain

unchanged and unaffected.  Not only has IBS not challenged this portion of

the Determination, *see id.* at 40, but even if it had, there is no constitutional

infirmity associated with the CRB having adopted it either in its first

determination or as it did in the instant Determination because this adoption

was purely ministerial and did not reflect any discretion on the part of the

CRB.  Furthermore, any action by this Court that would either displace the

Settlement's adoption or re-open the record as to its adoption would

prejudice CBI and contravene Congress's intent to encourage settlements

between the parties and reduce litigation costs for all involved.

## ARGUMENT

   I.  The Portion of the Determination Incorporating the Settlement for the
       Statutory Rates and Terms for NEWs Should Remain Untouched
       Because it is not Unconstitutional.

        A.  IBS has not challenged the constitutionality of the portion of
           the Determination reflecting adoption of the Settlement.

In its appeal IBS takes issue with the CRB conducting remand

proceedings using the earlier-generated record and for not further

differentiating rates and terms for "small" and "very small" noncommercial

7

webcasters.  It does not take issue with the portion of the Determination that
established the statutory rates and terms for the particular class of non-
commercial *educational* webcasters.  See, e.g., (IBS Br. 40) (discussing how
it was not challenging the $100 proxy fee a NEW could pay in lieu of
complying with recordkeeping regulations, a provision established by the
Settlement).  Although IBS has argued for the entire Determination to be set
aside in its entirety, it has only supplied arguments to support the setting
aside of the portion of the Determination relating to the particular classes of
"small" and "very small" webcasters IBS was advocating for during the
proceeding.  *See*, *e.g.*, *id.* at 33-39.  It provides no support for setting aside
the portion of the Determination incorporating the Settlement that addressed
the class of NEWs.  That portion of the Determination, and its resulting
regulations, are thus beyond the scope of this appeal and should remain
untouched even if this Court were to provide IBS with a remedy relating to
how this proceeding addressed these other classes of "small" and "very
small" webcasters.

B.     Even if the CRB had been unconstitutionally formed at the time it originally adopted the Settlement, the Settlement must still stand because the adoption was purely ministerial and not subject to the Judges' discretion.

In its brief in *IBS II* CBI had argued that, even if the CRB had been unconstitutionally appointed, it was irrelevant for purposes of adopting the settlement.[5]  In rendering its decision in *IBS II*, however, this Court was silent as to the specific disposition of the Settlement.  Nonetheless, because the decision set aside the CRB's previous determination, and because the adoption of the Settlement had been part of the determination, the CRB chose to reconsider its adoption afresh as part of its remand proceeding. (CRB Br. 10).

The result was necessarily the same.  Section 801(b)(7) requires the Judges to "adopt" an agreement between "some or all" of the participants in a proceeding "as a basis for statutory terms and rates. "  They may only decline to do so *if*, after "provid[ing] to those that would be bound" an "opportunity to comment, " a party objects *and* the Judges "conclude, based on the record before them if one exists, that the agreement does not provide a reasonable basis for setting statutory terms or rates. "  17 U.S.C.

---

[5] Br. of Intervenor College Broadcasters, Inc. for Appellee, *Intercollegiate Broadcasting System, Inc. v. CRB,* 684 F.3d 1332 (No. 11-1083) (Dec. 23, 2011).

9

§ 801(b)(7)(A)(ii) (emphasis added).  If no objections to the agreement are made, then clause (ii) does not apply, no determination of reasonableness is required, and the Judges *must* adopt the agreement.

The record contained no objection.  Although in Web III IBS had initially filed what it described as an objection to the College Broadcasters-SoundExchange agreement, IBS's counsel later clarified that IBS objected *only* to the extent of that agreement being applied to the *separate* categories of webcaster that IBS had proposed – not to the agreement by its own terms. 79 Fed. Reg. at 23,121 (JA 276).  That clarification effectively withdrew the objection, thus relieving the Judges from any duty to consider any aspect of the agreement prior to adopting it as the rates and terms for NEWs.[6] Therefore the Judges' function each time it adopted the Settlement was entirely ministerial and not a discretionary exercise of power subject to constitutional scrutiny.  No other Judges or similar authority, however appointed, could have reached a different decision with respect to the Settlement.

---

[6] 79 Fed. Reg. at 23,121 (JA 276) ("Finding neither a proper nor a credible objection to the SoundExchange-CBI agreement, nor other grounds requiring rejection, we adopt the agreement").

II. Reopening the Record with Respect to the Settlement Would Prejudice CBI and Waste Resources.

In addition to setting aside the Determination as a whole, IBS also asks this Court to allow it to re-open the record. Even if this Court were to grant IBS an opportunity to re-open the record, any such order should make clear that it only applies to the record with respect to "small" and "very small" webcasters, and not the NEWs whose rates and terms were established by the adoption of the Settlement.

In codifying 17 U.S.C. § 801(b)(7)(A) Congress intended to encourage settlements as a means of establishing the statutory rates and terms. H. Rep. No. 108-408 at 24 (2004) ("By facilitating and encouraging settlement agreements for determining royalty rates ... this section reduces the need to conduct full-fledged rate-setting and distribution proceedings.").[7] Litigating statutory rates and terms is costly for all involved, so allowing them to be established through this settlement mechanism provides a presumptively more resource-efficient alternative. *Id.* ("This will generate savings while expediting the disposition of proceedings.") This policy value will be frustrated, however, if the record is allowed to be re-opened with

_____

[7] *See also* Webcaster Settlement Act of 2008, Pub. L. No. 110–435, 122 Stat. 4974 (Oct. 16, 2008); Webcaster Settlement Act of 2009, Pub. L. No. 111–36, 123 Stat. 1926 (June 30, 2009).

11

respect to the Settlement.  All of the statutory I's necessary to support its

adoption have been properly dotted, and ample opportunity was available for

everyone, including IBS, to develop the record with regard to it.  79 Fed.

Reg. at 23,121 (JA 276).  The settling parties should be able to rely on this

finality and not have to expend further resources to obtain the Settlement's

adoption.  Therefore, not only should the portion of the Determination

adopting the Settlement be allowed to stand, but there also should not be an

occasion to re-open the record on which it was predicated.[8]

## CONCLUSION

Even if IBS were to succeed on its arguments in this appeal, the

adoption of the Settlement as the statutory rates and terms for NEWs should

remain valid.  Therefore, the Court should carve out the portion of the

Determination adopting that agreement if the Court remands the proceedings

to the CRB in any form.

Dated:  December 1, 2014

---

[8] *See* H. Rep. No. 108-408 at 24 ("Because settlement agreements can be offered at any time before final disposition of a proceeding, the extent of the record before the [Judges] may vary widely depending on the timing of the settlement agreement.  Bearing in mind the objective of encouraging settlement, the [Judges] are to use their best judgment as to whether the record before them indicates the proposed agreement is not likely to meet the relevant statutory standard.").

12

Respectfully submitted,

COLLEGE BROADCASTERS INC.

By:  /s/ Catherine R. Gellis
Catherine R. Gellis, Esq.
California Bar No. 251927
P.O. Box 2477
Sausalito, CA 94966
Phone: (202) 642-2849
cathy@cgcounsel.com

DAVID D. GOLDEN
CONSTANTINE CANNON LLP
D.C. Bar No. 985047
1001 Pennsylvania Ave., N.W.
Suite 1300N
Washington, DC 20004
(202) 204-3500
dgolden@constantinecannon.com

*Counsel for College Broadcasters, Inc.*

13

## CERTIFICATE OF COMPLIANCE

I, Catherine R. Gellis, in reliance on the word count of the word processing system used to prepare this brief, certify that the foregoing brief complies with the type-volume limitation set forth in this Court's Order of November 12, 2013.  The brief contains 2,413 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Local Rule 32(a)(1).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5), and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared in a proportionately spaced typeface using Microsoft Word in Times New Roman 14-point font.

/s/ Catherine R. Gellis

Dated: December 1, 2014                    Catherine R. Gellis

# CIRCUIT RULE 28(d)(4) CERTIFICATE

Pursuant to D.C. Circuit Rule 28(d), the undersigned certifies that counsel for CBI has conferred with counsel for the other intervenor, SoundExchange, and the parties have determined that submission of a single brief is not practicable in this case. Although both parties favor the preservation of the Settlement as the statutory rates and terms for NEWs, SoundExchange, as the collective designated as the administrator of statutory licenses and as the representative of the interests of copyright owners and performers, and CBI, as a representative of the interests of webcasters who perform copyrighted sound recordings, represent adverse groups and in their briefs have addressed issues particular to their respective interests. The parties have therefore agreed that separate intervenor briefs are required in this case in light of the different interests represented and arguments presented.

/s/ Catherine R. Gellis

Dated: December 1, 2014                                        Catherine R. Gellis

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2014, using the Appellate CM/ECF system, I electronically caused to be filed with the Clerk of Court for the U.S. Court of Appeals for the District of Columbia Circuit the foregoing Brief. Participants in the case are registered CM/ECF users and the service will be accomplished by the Appellate CM/ECF system.

Dated: December 1, 2014
/s/ David D. Golden
David D. Golden

# ADDENDUM

# ADDENDUM CONTENTS

37 C.F.R. §380.20 General.

37 C.F.R. §380.21 Definitions.

**37 C.F.R. §380.20 General.**

(a) *Scope.* This subpart establishes rates and terms, including requirements for royalty payments, recordkeeping and reports of use, for the public performance of sound recordings in certain digital transmissions made by Noncommercial Educational Webcasters as set forth herein in accordance with the provisions of 17 U.S.C. 114, and the making of Ephemeral Recordings by Noncommercial Educational Webcasters as set forth herein in accordance with the provisions of 17 U.S.C. 112(e), during the period January 1, 2011, through December 31, 2015.

(b) *Legal compliance.* Noncommercial Educational Webcasters relying upon the statutory licenses set forth in 17 U.S.C. 112(e) and 114 shall comply with the requirements of those sections, the rates and terms of this subpart, and any other applicable regulations not inconsistent with the rates and terms set forth herein.

(c) *Relationship to voluntary agreements.* Notwithstanding the royalty rates and terms established in this subpart, the rates and terms of any license agreements entered into by Copyright Owners and digital audio services shall apply in lieu of the rates and terms of this subpart to transmissions within the scope of such agreements.

A1

**37 C.F.R. §380.21 Definitions.**

For purposes of this subpart, the following definitions shall apply:

*ATH or Aggregate Tuning Hours* means the total hours of programming that a Noncommercial Educational Webcaster has transmitted during the relevant period to all listeners within the United States over all channels and stations that provide audio programming consisting, in whole or in part, of Eligible Transmissions, including from any archived programs, less the actual running time of any sound recordings for which the Noncommercial Educational Webcaster has obtained direct licenses apart from 17 U.S.C. 114(d)(2) or which do not require a license under United States copyright law. By way of example, if a Noncommercial Educational Webcaster transmitted one hour of programming to 10 simultaneous listeners, the Noncommercial Educational Webcaster's Aggregate Tuning Hours would equal 10. If three minutes of that hour consisted of transmission of a directly licensed recording, the Noncommercial Educational Webcaster's Aggregate Tuning Hours would equal 9 hours and 30 minutes. As an additional example, if one listener listened to a Noncommercial Educational Webcaster for 10 hours (and none of the recordings transmitted during that time was directly licensed), the Noncommercial Educational Webcaster's Aggregate Tuning Hours would equal 10.

*Collective* is the collection and distribution organization that is designated by the Copyright Royalty Judges. For the 2011-2015 license period, the Collective is SoundExchange, Inc.

*Copyright Owners* are sound recording copyright owners who are entitled to royalty payments made under this subpart pursuant to the statutory licenses under 17 U.S.C. 112(e) and 114(f).

*Eligible Transmission* means an eligible nonsubscription transmission made by a Noncommercial Educational Webcaster over the Internet.

*Ephemeral Recording* is a phonorecord created for the purpose of facilitating an Eligible Transmission of a public performance of a sound recording under a statutory license in accordance with 17 U.S.C. 114(f), and subject to the limitations specified in 17 U.S.C. 112(e).

*Noncommercial Educational Webcaster* means Noncommercial Webcaster (as defined in 17 U.S.C. 114(f)(5)(E)(i)) that

(1) Has obtained a compulsory license under 17 U.S.C. 112(e) and 114 and the implementing regulations therefor to make Eligible Transmissions and related ephemeral recordings;

(2) Complies with all applicable provisions of Sections 112(e) and 114 and applicable regulations;

(3) Is directly operated by, or is affiliated with and officially sanctioned by, and the digital audio transmission operations of which are staffed substantially by students enrolled at, a domestically accredited primary or secondary school, college, university or other post-secondary degree-granting educational institution; and

(4) Is not a "public broadcasting entity" (as defined in 17 U.S.C. 118(g)) qualified to receive funding from the Corporation for Public Broadcasting pursuant to the criteria set forth in 47 U.S.C. 396.

*Performance* is each instance in which any portion of a sound recording is publicly performed to a listener by means of a digital audio transmission (*e.g.,* the delivery of any portion of a single track from a compact disc to one listener) but excluding the following:

(1) A performance of a sound recording that does not require a license (*e.g.,* a sound recording that is not copyrighted);

(2) A performance of a sound recording for which the Noncommercial Educational Webcaster has previously obtained a license from the Copyright Owner of such sound recording; and

(3) An incidental performance that both:

(i) Makes no more than incidental use of sound recordings, including, but not limited to, brief musical transitions in and out of commercials or program segments, brief performances during news, talk and sports programming, brief background performances during disk jockey announcements, brief performances during commercials of sixty seconds or less in duration, or brief performances during sporting or other public events; and

A3

(ii) Other than ambient music that is background at a public event, does not contain an entire sound recording and does not feature a particular sound recording of more than thirty seconds (as in the case of a sound recording used as a theme song).

*Performers* means the independent administrators identified in 17 U.S.C. 114(g)(2)(B) and (C) and the parties identified in 17 U.S.C. 114(g)(2)(D).

*Qualified Auditor* is a Certified Public Accountant.

A4